990 F.2d 160
 61 USLW 2631, 28 Collier Bankr.Cas.2d 1139,
Bankr. L. Rep. P 75,202
 In re Alvie Stanley LINKOUS, Debtor.
PIEDMONT TRUST BANK, Plaintiff-Appellee,
v.
Alvie Stanley LINKOUS, Defendant-Appellant,
and
Laurence P. Morin, Defendant.
In re Alvie Stanley LINKOUS, Debtor.
PIEDMONT TRUST BANK, Plaintiff-Appellee,
v.
Laurence P. MORIN, Defendant-Appellant,
and
Alvie Stanley Linkous, Defendant.
 Nos. 92-1287, 92-1326.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 26, 1992.
Decided April 1, 1993.
 
 Laurence Potter Morin, Lynchburg, VA, for appellants.
 Rickey G. Young, Williams, Luck & Williams, Martinsville, VA, for appellant Linkous.
 William Francis Stone, Jr., Martinsville, VA, for plaintiff-appellee.
 Before MURNAGHAN, Circuit Judge, CHAPMAN, Senior Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 MURNAGHAN, Circuit Judge:
 
 
 1
 Alvie Linkous, the appellant, filed for bankruptcy pursuant to Chapter 13 and submitted a debtor's plan to the U.S. Bankruptcy Court for the Western District of Virginia on April 26, 1990; she also mailed a summary of the plan to all creditors. At the time, Linkous had two outstanding secured loans from Piedmont Trust Bank. However, since the value of the collateral securing each loan was less than the current balance of each loan, Linkous' plan considered the Piedmont loans as secured only to the extent of the collateral's fair market value and unsecured for the remainder, as allowed by 11 U.S.C. § 506(a). At the confirmation hearing, which was not attended by Piedmont, the bankruptcy court confirmed Linkous' plan.
 
 
 2
 Piedmont filed claims on August 3, 1990, and, on August 16, made a Motion to Revoke Order Confirming Plan and Dismiss or Convert Case. While it acknowledged receipt of both the court notice and the plan summary, it explained that clerical error prevented the plan summary from being brought to the attention of the appropriate person.
 
 
 3
 The bankruptcy judge dismissed Piedmont's motions ruling that it had failed to protect its interests and was too late to challenge successfully the confirmation. On appeal to the district court, the district judge reversed in part the denial of Piedmont's motion to revoke the confirmation order and vacated the confirmation order insofar as it affected Piedmont's claims. 141 B.R. 890. The district judge based his decision on inadequacy of notice to Piedmont. Debtor Linkous and Trustee, Laurence Morin, have appealed.
 
 
 4
 On appeal, we address the question of whether Piedmont received adequate notice of the section 506 valuation of its secured claims against Linkous.
 
 
 5
 Linkous filed a Chapter 13 bankruptcy petition on April 26, 1990. In her petition, she listed debts owing to Piedmont Trust Bank in the amounts of $18,000 and $4,000, secured by a 1986 mobile home and a 1984 Plymouth Reliant, respectively. In light of her estimated fair market value of each, her plan only treated $6,000 of the mobile home loan and $1,000 of the car loan as secured. The remainder of each was listed as unsecured, pursuant to 11 U.S.C. § 506(a). The plan was mailed to the bankruptcy court and to the trustee.
 
 
 6
 In addition, Linkous mailed a summary of her plan to the court, the trustee, and all creditors, including Piedmont. The summary gave a brief account of the plan proposed by the debtor and included the following proposals from the plan:
 
 
 7
 1) 36 months of $170 payments;
 
 
 8
 2) payment of 10% of unsecured debts;
 
 
 9
 3) $100/month payment by the Trustee to Piedmont for the mobile home;[1]
 
 
 10
 4) name, phone number, and address of person to contact with any questions regarding plan.
 
 
 11
 The summary did not mention the car loan nor did it explicitly state that the secured loans would be treated as only partially secured.
 
 
 12
 On May 1, 1990, the clerk of the bankruptcy court mailed notice to all creditors that the meeting of creditors would be held on June 6, 1990 and that a confirmation hearing was scheduled for June 20, 1990. Piedmont did not appear at either the creditors' meeting or confirmation hearing. Since no objections were filed and on the recommendation of the Chapter 13 Trustee, the bankruptcy court confirmed Linkous' plan and an order was entered.
 
 
 13
 Two weeks later, on August 3, Piedmont filed proofs of claim establishing its security interests in the mobile home and the Plymouth, stating that the amounts owing were $18,641.31 and $4,322.82, respectively. On August 16, Piedmont filed its Motion to Revoke Order Confirming Plan and Dismiss or Convert Case. In its motion, the Bank acknowledged receipt of the plan summary and the court's notice but claims clerical error resulted in the correspondence being placed in Linkous' loan files instead of being given to the account representative.
 
 
 14
 The bankruptcy judge, after hearing arguments and testimony from Piedmont, denied its motions. He reasoned that it demonstrated no grounds upon which to revoke the confirmation. The bankruptcy court concluded that "the Bank, even though it had actual and adequate notice of these proceedings, failed to use any of the numerous procedures available to it to protect its interests" and could no longer raise claims that may have been valid before confirmation.[2]
 
 
 15
 Piedmont appealed to the United States District Court for the Western District of Virginia. The district judge reversed in part the bankruptcy court's denial of the Motion to Revoke Confirmation, vacating the confirmation order with respect to Piedmont's claims. The district court's ruling rested on a determination that Piedmont had not received adequate notice of what would take place in the confirmation proceedings. In other words, the district judge did not merely substitute his finding of fact for that of the bankruptcy judge. Rather he ruled that the question of fact, the issue of valuation under § 506(a), was not properly before the bankruptcy judge.
 
 
 16
 Before we can review the bankruptcy court's confirmation of Linkous' plan, we must consider the effect of such confirmation. 11 U.S.C. § 1327(a) clearly states that
 
 
 17
 The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted or has rejected the plan.
 
 
 18
 Therefore, a bankruptcy court confirmation order generally is treated as res judicata. However, we cannot defer to such an order on res judicata grounds if it would result in a denial of due process in violation of the Fifth Amendment of the United States Constitution. The United States Supreme Court has concluded that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (citations omitted). Accordingly, we cannot accord the bankruptcy court's order the finality which would attach if the notice given to Piedmont was adequate.
 
 
 19
 Although Piedmont concedes having received both Linkous' summary and the court's notice, i.e., actual notice, it has argued that it did not receive adequate notice that the bankruptcy court would make a section 506 valuation at the confirmation hearing. The procedural framework for valuing collateral as a part of a section 506(a) determination is contained in Bankruptcy Rule 3012:
 
 
 20
 The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other person the court may direct.
 
 
 21
 (Emphasis added).
 
 
 22
 Only one circuit--the Eleventh--has applied Rule 3012 to the issue of notification of a § 506(a) valuation. In re Calvert, 907 F.2d 1069 (11th Cir.1990). It concluded that while a § 506(a) valuation hearing may be held in conjunction with a confirmation hearing, "[m]ere notice that the bankruptcy court will hold a confirmation hearing on a proposed bankruptcy plan, without inclusion of notice specifically directed at the security valuation process, does not satisfy the requirement of Rule 3012." 907 F.2d at 1072.
 
 
 23
 In order to satisfy due process requirements, "the notice [of the proceedings] must be of such nature as reasonably to convey the required information...." Mullane, 339 U.S. at 314, 70 S.Ct. at 657 (citing Grannis v. Ordean, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1918)). In the present case, the information required by statute is that Linkous plans to hold a section 506 valuation hearing. Therefore, in order "reasonably to convey the required information," Linkous' notice to creditors must state that such a hearing will be held. Consequently, the notice to Piedmont was inadequate as it did not make reference to an intent to reevaluate the secured claims pursuant to § 506(a).
 
 
 24
 Appellants have contended that Piedmont, as a sophisticated lender, should have known that its interests were in jeopardy. Such an argument has some merit for we do expect creditors to take some responsibility in the bankruptcy process or lose their rights. See, e.g., Matter of Pence, 905 F.2d 1107, 1109 (7th Cir.1990) ("[The creditor] was not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings."). However, notwithstanding the recognized responsibilities of the creditor, the debtor also must meet certain burdens. A debtor should inform the secured creditor of an intent to reclassify its claim into partially secured and partially unsecured status. Placing such a responsibility with the debtor is both logical and not unduly burdensome.
 
 
 25
 The violation of Piedmont's due process rights, resulting from the district court's determination that notice of a § 506 valuation was inadequate, was a sufficient ground for vacating, with respect to Piedmont, the final order of the bankruptcy court. As the district court found, the bankruptcy court should hold a § 506 hearing in order properly to determine what portions of Piedmont's loans should be considered secured and what portions unsecured.[3] However, the bankruptcy court's order will remain intact with respect to all other determinations, there being no appeal as to them.
 
 Accordingly, the district court's order is
 
 26
 AFFIRMED.
 
 CHAPMAN, Senior Circuit Judge, dissenting:
 
 27
 The issues in this case arise because the bankruptcy court confirmed Linkous's Chapter 13 Plan before Piedmont timely filed its proof of claim.[1] Because there is a strong interest to allow a debtor to begin making payments under a proposed plan as soon as possible, it is not unusual for the confirmation hearing to be scheduled before the deadline for a creditor to file its proof of claim. Piedmont received notice of the confirmation hearing and a plan summary in accordance with Rules 3015 and 2002(b).[2]
 
 
 28
 Section 1324 of the United States Bankruptcy Code, ("the Code")[3] permits any "party in interest" to object to the confirmation of the proposed plan at the confirmation hearing. 11 U.S.C. § 1324 (1988).[4] Piedmont admits that the only reason it failed to appear at the hearing or object to the confirmation of Linkous's proposed plan was because it misplaced its notice.
 
 
 29
 Two months after Linkous's plan was confirmed, Piedmont filed a proof of claim for its security interest in Linkous's car and mobile home. The same day, Piedmont filed a Motion to Revoke Order Confirming Plan. Linkous did not file an objection to Piedmont's proof of claim. The bankruptcy court denied Piedmont's motion.
 
 
 30
 Linkous's plan was confirmed pursuant to § 1325. Section 1322(b)(2) permits a plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." 11 U.S.C. § 1322(b)(2) (emphasis added). Therefore, Linkous's confirmed plan, although it did not provide for full payment to Piedmont of its secured loan on Linkous's mobile home or car, did not violate any provision of the Code.
 
 
 31
 A confirmed plan may only be revoked if the order confirming the plan "was procured by fraud." 11 U.S.C. § 1330(a). Section 1327 binds all creditors, whether they participate or not, to the provisions of a confirmed plan.[5] Absent fraud, a creditor must protect its right to payment by objecting to a proposed plan before it is confirmed. There is no indication from the record that the order confirming Linkous's plan was procured by fraud. Therefore, the bankruptcy court properly held that the confirmed plan was res judicata as to all of Piedmont's claims concerning the payment it was to receive under Linkous's plan.
 
 
 32
 Although Piedmont received notice of the confirmation hearing and the proposed plan, which complied with all provisions of the Code, and the confirmation order was not procured by fraud, the majority contends that Piedmont was denied due process under the Fifth Amendment to the United States Constitution. According to the majority, Piedmont was denied due process because its notice of the confirmation hearing failed to specifically indicate that, at the hearing, its collateral would undergo valuation pursuant to 11 U.S.C. § 506(a). An examination of the language of the Bankruptcy Code reveals, however, that the notice of the confirmation hearing and the copy of the plan summary received by Piedmont gave notice of what was to take place at the confirmation hearing and was sufficient to satisfy the requirements of both the Bankruptcy Code and the Fifth Amendment.
 
 
 33
 Notice of the Confirmation Hearing Satisfied the Code
 
 
 34
 The majority cites Bankruptcy Rule 3012 for the proposition that, before the bankruptcy court could undertake a valuation pursuant to § 506(a), it had to provide specific notice to Piedmont. The majority cites In re Calvert, 907 F.2d 1069 (11th Cir.1990), for the proposition that secured collateral may not undergo valuation during a confirmation hearing unless the secured creditor is given specific notice that valuation of its security will occur. Id. at 1072.
 
 
 35
 The majority fails to distinguish the facts of Calvert from the facts before us. In Calvert, the creditor filed a proof of claim pursuant to § 501, to which the debtor did not object, more than three months before the confirmation hearing. Id. at 1070.
 
 
 36
 A creditor must have an allowed secured claim to be entitled to the specific notice under Rule 3012. Rule 3012 only applies to valuation hearings conducted pursuant to § 506. A § 506(a) valuation hearing, which determines the extent to which a creditor's claim is secured, is limited to the valuation of claims which are first "allowed" under § 502.[6] Because filing a proof of claim is a prerequisite to having a claim "allowed," under § 502, a § 506(a) valuation hearing may only be held if the secured creditor (or debtor on the creditor's behalf pursuant to Bankruptcy Rule 3004) has first filed a proof of claim. In re Hartford, 7 B.R. 914, 916 (Bankr.D.Maine 1981); In re Hotel Associates, Inc., 3 B.R. 340, 341-42 (Bankr.E.D.Pa.1980).
 
 
 37
 In Calvert, the court specifically found that, because the debtor had not submitted a written objection to the creditor's proof of claim (which was filed before the confirmation hearing) the claim was deemed allowed under § 502(a). Calvert, 907 F.2d at 1071 n. 1. Specifically the court stated:
 
 
 38
 Given the lack of written objection, Green Tree's claim was deemed allowed under § 502(a). The hearing on collateral valuation was part of the subsequent § 506 determination of the extent to which this allowed claim was secured. Thus, the question for the court is only whether the bankruptcy court followed the appropriate procedures, as dictated by § 506 and the Rules promulgated thereunder, in valuating the collateral as part of this determination.
 
 
 39
 Id.
 
 
 40
 In the case at bar, however, Piedmont did not file its proof of claim until two months after the confirmation hearing had been held. A § 506(a) hearing is an adversary proceeding.[7] Because Piedmont did not file a proof of claim or object to Linkous's proposed plan during the confirmation hearing, the terms of the proposed plan were uncontested. The confirmation hearing did not therefore constitute a § 506(a) hearing and the specific notice requirements of Rule 3012 did not apply.
 
 
 41
 It should also be remembered that, having failed to object to Linkous's plan, Piedmont could have elected to sit out the bankruptcy proceedings, not file any proof of claim, not receive any payments under the plan, and merely retain its lien pursuant to § 506(d). Under this scenario, Piedmont's lien on the mobile home and car would have survived the entire bankruptcy proceeding unaffected.
 
 
 42
 The Code does not require that notice of a confirmation hearing contain specific notice that collateral will be valuated. The purpose of the confirmation hearing is to determine whether the payments to be made by the debtor under the proposed plan satisfy the requirements of the Code. All parties should know that, in order for the court to determine whether payments are adequate, a valuation of the collateral will necessarily take place.
 
 
 43
 The notice of the confirmation hearing and the copy of the plan summary received by Piedmont, had they not been misplaced, provided it with sufficient notice before the confirmation hearing of the fact that the payments under Linkous's proposed plan were clearly insufficient to fully repay the car and mobile home loan. Section 1324 permits any "party in interest" to file an objection to a proposed plan. Section 1324 does not require a party to first file a proof of claim before it may object to a proposed plan.
 
 
 44
 Contrary to the majority's opinion, since Piedmont had filed no proof of claim, Linkous could not possibly notify Piedmont of any intent to "reclassify" it. Linkous did all that she was required to do under the Code. The majority incorrectly imposes a duty on Linkous to take it upon herself to contact Piedmont, interpret the plan summary, and spell out the consequences of the confirmation hearing if Piedmont fails to object. Although noble, such a requirement is nowhere to be found in the Code.
 
 
 45
 Chapter 13 contains numerous provisions that protect secured creditors. Secured creditors have the right to object to any proposed plan which might impair their secured status until they have filed their proof of claim. Once a creditor files a proof of claim, the creditor's valuation of its claim constitutes prima facie evidence of the amount to which the claim is secured unless the debtor files a timely written objection pursuant to Rule 3007. At that point a contested matter exists and the debtor may begin adversary proceedings to determine the creditor's secured status pursuant to § 506(a). Only at that point should the creditor be entitled to notice pursuant to Rule 3012.
 
 
 46
 The Notice Satisfied Due Process Requirements
 
 
 47
 The notice of the confirmation hearing received by Piedmont also satisfied the due process requirements of the Fifth Amendment. Piedmont had not filed its proof of claim nor objected to the proposed plan, therefore, it was not entitled to a § 506(a) hearing and the specific notice requirements of Rule 3012 did not apply. The payment schedule contained in the plan summary combined with the notice of the confirmation hearing provided Piedmont with sufficient information upon which it could discern that its security interests would be impaired if it did not either file a proof of claim or object to the plan at the confirmation hearing. The notice afforded to Piedmont satisfied the due process requirements of the Fifth Amendment because it sufficiently apprised Piedmont of the pendency of the action and afforded it an opportunity to present its objections. Mullane v. Central Hanover Bank & Trust, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).
 
 
 48
 The law is constantly seeking finality. A single bankruptcy court may handle hundreds of cases filed under Chapter 13 each week. Their orderly disposition depends on the finality of confirmed plans. Chapter 13 cases will overburden the courts if a creditor may ignore the confirmation process and later mount a collateral attack on the payments it is to receive under the confirmed plan. The language of the Bankruptcy Code clearly states that an order confirming a Chapter 13 plan may only be revoked if procured by fraud. Therefore, the district court's decision to vacate the confirmation order with respect to Piedmont's claims should be reversed.
 
 
 
 [1]
 Linkous and Morin have contended in their brief that the summary stated that 60 such payments would be made to Piedmont, but the copy in the appendix does not include any reference to the number of payments to be made to Piedmont. The only reference to number of payments is that regarding 36 payments by the debtor to the trustee
 
 
 [2]
 One such claim, of course, would be that the property at stake is worth more than the estimate provided by Linkous
 
 
 [3]
 During a hearing in front of the bankruptcy court, Piedmont estimated the value of the car at $2450 and the house at $9000. Given the limited disparity between Linkous' and Piedmont's estimates ($1450 on the car and $3000 on the mobile home), the bankruptcy court should not face much difficulty in making an equitable finding under § 506
 
 
 [1]
 The Federal Rules of Bankruptcy Procedure ("the Rules") provide that "a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code." Fed.R. of Bankr.P. 3002(c). Rule 2002(b), however, only requires the bankruptcy court to provide creditors "not less than 25 days notice by mail ... of the time fixed for filing objections to and the hearing to consider confirmation of a plan." It is therefore within the Rules for the court to hold a confirmation hearing before the expiration of the time allowed creditors for filing a proof of claim. Because there is a strong interest to allow a debtor to begin making payments under a proposed plan as soon as possible, it is not unusual for the confirmation hearing to be scheduled before the deadline for a creditor to file its proof of claim
 
 
 [2]
 Rule 3015(b) requires a debtor to file a Chapter 13 plan within 15 days of filing the petition. Rule 3015(d) requires the clerk to include either the plan or a summary of the plan with each notice of the hearing on confirmation pursuant to Rule 2002(b)
 
 
 [3]
 Hereinafter, unless otherwise indicated, all references to specific sections are to sections of the Bankruptcy Code
 
 
 [4]
 The term "party in interest" is not defined in the Code. The district court cites In re Stewart, 46 B.R. 73 (Bankr.D.Or.1985), for the proposition that Piedmont could not have objected to the plan until it had filed its proof of claim. In re Linkous, 141 B.R. 890, 898 n. 2 (W.D.Va.1992). The court in Stewart, defined "party in interest" narrowly to include only those parties with an "allowed secured claim." There is no indication in the Code that Congress intended "party in interest" to be so narrowly defined. Other courts have not disqualified creditors who have not filed a proof of claim from objecting to confirmation of a plan. See, In re Rite Autotronics Corp., 27 B.R. 599, 600 (Bankr. 9th Cir.1982); In re Hardy, 56 B.R. 95, 96 (Bankr.N.D.Ala.1985)
 
 
 [5]
 Section 1327 states:
 The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
 11 U.S.C. § 1327(a).
 Generally, an Order of Confirmation in a Chapter 13 case is to be given res judicata effect as to all issues that were decided, or could have been decided, at the time of confirmation. See, In re Evans, 30 B.R. 530 (9th Cir.1983); In re Guilbeau, 74 B.R. 13 (Bankr.W.D.La.1987); In re Russell, 29 B.R. 332 (Bankr.E.D.N.Y.1983). It was necessary for the bankruptcy court to determine the fair market value of Linkous's mobile home and car during the confirmation hearing in order for the court to establish that her plan satisfied the requirements of § 1325. Therefore, the Order of Confirmation barred Piedmont's assertion in its proof of claim that its collateral had a higher fair market value and it was entitled to greater payments than those provided for in the confirmed plan.
 
 
 [6]
 The language of 11 U.S.C. § 506(a) limits its application to "allowed" claims. Specifically it states:
 An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined ... in conjunction with any hearing ... on a plan affecting such creditor's interest (emphasis added).
 Under 11 U.S.C. § 502(a), which governs the allowance of claims by the bankruptcy court, "[a] claim or interest, proof of which is filed under § 501 of this title, is deemed allowed unless a party in interest ... objects." Therefore, when a creditor timely files a proof of claim under § 501, such filing constitutes prima facie evidence of the validity and amount of its claim. In re Hartford, 7 B.R. 914, 916 n. 7 (Bankr.D.Maine 1981).
 
 
 [7]
 Rule 7001 states that an adversary proceeding is a "proceeding in bankruptcy court ... (2) to determine the validity, priority, or extent of a lien or other interest in property...."