**SALLIEMAE SERVICING,**
**et al., Appellants,**

v.

**Christopher P. BANKS, Appellee.**

**No. CIV.A. 3:01CV00066.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Dec. 10, 2001.

Howard G. Salisbury, Jr., Kay, Casto, Chaney, Love & Wise, Charleston, WV, for appellants.

Mark B. Peterson, Ogle & Peterson, P.C., Charlottesville, VA, for appellee.

## OPINION

MOON, District Judge.

Educational Credit Management Corporation ("ECMC") appeals an Order entered by the United States Bankruptcy Court for the Western District of Virginia granting summary judgment to Christo-

pher Banks ("Mr. Banks"), who sought a declaratory judgment with respect to postpetition interest on his student loans. Because this Court concludes that Mr. Banks included improper language in his Chapter 13 Plan, that the confirmation of the Plan denied ECMC its due process rights, and that the post-petition interest on Mr. Banks' student loan is not dischargeable, the decision of the bankruptcy court must be reversed.

## I. FACTS AND PROCEDURAL BACKGROUND

The facts in this case are undisputed. In 1987, Mr. Banks borrowed $23,033.58 under a student loan note bearing interest at 9% per annum. Six years later, on July 20, 1994, Mr. Banks and his wife filed a petition under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 1301, *et seq.* The plan read, in relevant part, as follows:

> To unsecured creditors whose claims are allowed.

> Unsecured creditors shall be divided into two classes.

> Class I: Claims consisting of student loans for Debtor Christopher P. Banks. The trustee shall pay all available funds to this class, which consists of Sallie Mae. During the pendancy [sic] of this case, no interest, penalties, late charges or costs of collection, including attorney's fees, shall accrue. Payments made by the trustee shall be applied directly to principal and, upon his discharge, debtor Christopher Banks shall be liable for only the unpaid balance of his prepetition debt. Debtors anticipate this Class will receive $4,029.76 or 12.97% of its allowed proved claim.

In August of that year, SallieMae assigned its claim, the amount of which had risen to $31,571.03, to Great Lakes Higher

Education Corporation ("Great Lakes"). In October, Mr. Banks filed two Amended Chapter 13 Plans, both of which contained the following language:

> Class I: Claims consisting of student loans for Debtor Christopher P. Banks (Sallie Mae). The Trustee shall pay to this Class $4,104.23, which is 13% of its anticipated allowed proved claim of $31,571.03. During the pendancy [sic] of this case, no interest, penalties, late charges, or costs of collection, including attorney's fees, shall accrue. Payments made by the trustee shall be applied directly to principal and, upon his discharge, Debtor Christopher Banks shall be liable for only the unpaid balance of his prepetition debt.

On November 21, the bankruptcy court entered an Order confirming Mr. Banks's Second Amended Chapter 13 Plan and provided that SallieMae would receive $4,104.23, "[i]n equal monthly installments after payment of administrative claims. All such payments shall be applied to principal. No interest, penalties, late charges, or costs of collection (including attorneys' fees) shall accrue." Prior to its entering the Second Amended Plan, the bankruptcy court also issued a Notice of Hearing which set the date of the confirmation hearing and stated that objections must be filed within 15 days. On January 11, 1996, Mr. Banks filed a Third Amended Plan which incorporated the language from the earlier Amended Plans "as previously confirmed by the court." On February 27, 1996, the bankruptcy court entered an Order confirming the Third Amended Plan.

Throughout the Chapter 13 proceedings, copies of Mr. Banks' original Chapter 13 plan and all amended plans were mailed to all of his creditors, including SallieMae and Great Lakes. Neither Great Lakes nor SallieMae filed objections to the confirmation of any of the Banks' plans, nor did either company appeal the confirmation orders. On the other hand, Mr. Banks never filed an adversary proceeding to challenge the dischargeability of any element of his student loan obligations, nor did he ever assert that allowing a claim for post-petition interest would constitute an undue hardship to Banks and his dependents.

On December 21, 1999, the bankruptcy court entered an Order Discharging Debtor After Completion Of Chapter 13 Plan, and closed the case.

Both during and subsequent to the pendency of Mr. Banks' Chapter 13 proceeding, the creditors of Mr. Banks' student loan obligations changed several times. On August 21, 1998 Great Lakes assigned Banks' student loan claim to ECMC. On March 2, 2000 ECMC reassigned Banks' student loan obligations to SallieMae, and on June 7, 2000, SallieMae assigned Banks' loan back to ECMC.

On March 17, 2000, SallieMae, evidently concluding that the post-petition interest was not discharged, mailed a past due notice to Mr. Banks and informed him that he now owed $43,341.95. Nearly two months later, on May 11, Mr. Banks filed a motion to reopen his Chapter 13 case, and on July 19, he filed an adversary proceeding in the bankruptcy court, whereupon the bankruptcy clerk served ECMC with a summons. In this action, Mr. Banks sought a declaration that the post-petition interest on his student loans had been discharged. On December 15, 2000, ECMC filed a Motion For Leave to Amend its Answer To Assert · Counter–Claim against Mr. Banks, which argued that Mr. Banks' post-petition interest was not discharged. ECMC asserted that any declaration that the bankruptcy court's December, 1999 Discharge Order discharged the post-petition interest of Mr. Banks' loan would be void as a violation of ECMC's

due process rights. The U.S. Bankruptcy Court for the Western District of Virginia granted summary judgment to Mr. Banks on May 1, 2001, and ECMC appeals from this ruling.

## II. STANDARD OF REVIEW

■ In reviewing decisions made by a bankruptcy court, this Court reviews questions of fact under a clearly erroneous standard. *Roland v. Unum Life Ins. Co.*, 223 B.R. 499, 501 (E.D.Va.1998) (citing Fed. R. Bankr.Proc. 8013); *Chevy Chase Bank v. Locke*, 227 B.R. 68, 69 (E.D.Va. 1998). A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). In contrast, this Court reviews conclusions of law pursuant to a *de novo* standard. *See In re James River Assoc.*, 148 B.R. 790, 794 (E.D.Va.1992) (quoting *In re Morris Communications NC, Inc.*, 914 F.2d 458, 467 (4th Cir.1990)).

## III. ANALYSIS

Mr. Banks asserts that since his Chapter 13 Plan was confirmed, it operates as *res judicata* and therefore should prevent ECMC from acquiring the accrued post-petition interest on his loan. ECMC counters that since it (or its predecessors in interest) did not receive adequate notice of the Plan, and that the Plan contained improper language, ECMC was denied due process. As a result, ECMC contends that Mr. Banks' post-petition interest was not discharged.

### A. Mr. Banks' Chapter 13 Plan

■ This Court, as always, begins with the plain language of the controlling statute, which provides that student loans are nondischargeable, "unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8).[1] Since student loans are nondischargeable absent an undue hardship, this Court must determine whether the interest which accrues following a bankruptcy candidate's Chapter 13 petition is nondischargeable as well. Of the courts which have considered this question, the vast majority[2] have concluded that this postpetition interest is also nondischargeable. *See, e.g., Lawrence v. Educational Credit Management Corp. (In re Lawrence)*, 251 B.R. 467, 471 (E.D.Va.2000) ("Like a debtor's principal student loan debt, postpetition interest on a nondischargeable student loan debt is also nondischargeable.") (citations omitted), *rev'd sub nom. on other grounds by In re Kielisch*, 258 F.3d 315 (4th Cir.2001). *See also*

---

**1.** 11 U.S.C. § 523(a)(8) provides, in relevant part, "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ... for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue

hardship on the debtor and the debtor's dependents...."

**2.** *In re Wasson*, 152 B.R. 639 (Bankr.D.N.M. 1993) is apparently the sole case to hold that postpetition interest is discharged along with nondischargeable student loan debt. Subsequent courts, however, have criticized Wasson for, among other things, confusing " 'the disallowance of unmatured interest with the nonaccrual of interest.' " *Leeper v. Pennsylvania Higher Education Assistance Agency*, 49 F.3d 98 (3d Cir.1995) (quoting *In re Shelbayah*, 165 B.R. 332, 337).

*Great Lakes Higher Education Corp. v. Pardee* (In re *Pardee* ), 218 B.R. 916 (9th Cir. BAP 1998) ("We conclude that postpetition interest on a nondischargeable student loan debt is nondischargeable under the Code.") (citations omitted); *Murphy v. Educational Credit Management Corp.* (*In re Murphy* ), 257 B.R. 72 (Bankr. N.D.Ala.2000); *In re Roa–Moreno,* 208 B.R. 488 (Bankr.C.D.Cal.1997); *In re Wagner,* 200 B.R. 160 (Bankr.N.D.Ohio 1996).

■ During the course of his Chapter 13 proceedings in this case, Mr. Banks filed both an initial Plan and several Amended Plans, each of which attempted to render the post-petition interest on his student loans dischargeable. The plans asserted that, "During the pendency of this case, no interest, penalties, late charges, or costs of collection, including attorney's fees, shall accrue. Payments made by the trustee shall be applied directly to principal and, upon his discharge, Debtor Christopher Banks shall be liable for only the unpaid balance of his prepetition debt." Mindful of the overwhelming precedent which has held that post-petition interest on a nondischargeable student loan debt is also nondischargeable, this Court concludes that the language in Mr. Banks' Chapter 13 Plan purporting to discharge post-petition interest was improper. In fact, Mr. Banks has failed to demonstrate—or even allege—that either he or his dependents would suffer an "undue hardship" as required by 11 U.S.C. § 523(a)(8), despite the fact that Congress requires such a finding in order for a court to render a debtor's student loan debt dischargeable.

### B. Mr. Banks' Chapter 13 Plan as Res Judicata

#### 1.

■ The Court must now determine whether Mr. Banks' confirmed Chapter 13 Plan, even though it contained improper language, should nevertheless operate as *res judicata* and bar ECMC's claim for post-petition interest. In most cases, a bankruptcy court order confirming a Chapter 13 Plan is treated as *res judicata.* See *Piedmont Trust Bank v. Linkous (In re Linkous* ), 990 F.2d 160, 162 (4th Cir. 1993). Indeed, the bankruptcy code itself provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided by the plan, and whether or not such creditor has objected to, has accepted or has rejected the plan." 11 U.S.C. § 1327(a).

■ The Court is mindful of the need for order and finality both generally and with respect to bankruptcy proceedings. See *Spartan Mills v. Bank of America, Illinois,* 112 F.3d 1251, 1255 (4th Cir.1997). Nevertheless, an order may not operate as *res judicata* should it result in the denial of a creditor's due process rights. *See* In re *Linkous,* 990 F.2d at 162 (citing *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.")). *See also Cen–Pen Corp. v. Hanson,* 58 F.3d 89, 93 (4th Cir. 1995).

■ In analogous contexts, the Fourth Circuit has held that confirmed Chapter 13 plans operate as *res judicata* only with respect to issues arising out of mere "contested matters." *See id.* at 93 (citing *In re Beard,* 112 B.R. 951, 955–56 (Bankr.

N.D.Ind.1990) ("If an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, will not have a preclusive effect....")). *See also* Fed. R. Bankr.Proc. 7004. In contrast, confirmation does not have preclusive effect over those issues which must be resolved in adversary proceedings, the commencement of which requires a summons and service of process as in Fed. R. Civ. Proc. 4. *Id.* For example, the *Cen–Pen* court concluded that when a creditor failed to initiate an adversary proceeding to determine the validity of a lien—as required by Fed. R. Bankr.Proc. 7001(2)—the debtor's Chapter 13 plan did not establish that the creditor held no valid lien against him. *Id.*

Similarly, in *Linkous,* the Fourth Circuit denied the preclusive effect of a debtor's Chapter 13 plan as applied to a creditor when the plan purported to dispose of a collateral valuation issue without adequate notice and hearing to the interested creditor. *Linkous,* 990 F.2d at 161. At issue in *Linkous* was 11 U.S.C. § 506(a), a statute which provides that, when the value of collateral securing a loan is less than the current value of the loan, that loan is considered secured only to the extent of the collateral's fair market value, and unsecured as to the remainder. However, the bankruptcy court may determine the value of the secured claim only "after a hearing on notice to the holder of the secured claim ...." Fed. R. Bankr.Proc. 3012. As a result, the *Linkous* court concluded that, although the creditor had received a summary of the Chapter 13 plan and the court's notice of a confirmation hearing, the notice failed to state that a § 506 valuation hearing was to be held. As a result, the *Linkous* Chapter 13 plan was inadequate. *See Linkous,* 990 F.2d at 162 (citing *In re Calvert,* 907 F.2d 1069 (11th Cir.1990) ("Mere notice that the bankruptcy court will hold a confirmation

hearing on a proposed bankruptcy plan, without inclusion of notice specifically directed at the security valuation process, does not satisfy the requirement of Rule 3012.")).

2.

 When viewed through the prism of Fourth Circuit precedent, Mr. Banks' Chapter 13 Plan should not be considered *res judicata.* Like the validity of a lien in *Cen–Pen* or the valuation of a secured interest in *Linkous,* the question of whether the post-petition interest on a student loan debt is dischargeable must be determined following a proper notice to and hearing with the concerned creditors—in this case, an adversary proceeding. *See* Fed. R. Bankr.Proc. 7001 (An adversary proceeding is "a proceeding ... to determine the dischargeability of a debt.").

Under the Rules, the bankruptcy court convenes adversary proceedings pursuant to the notice, service, and summons requirements of Fed. R. Civ. Proc. 4. *See* Fed. R. Bankr.Proc. 7004. Although ECMC and its predecessors in interest concede that they had received Mr. Banks' initial and amended Chapter 13 Plans, neither ECMC nor its predecessors were ever served formally with them, nor did Mr. Banks file an adversary proceeding to discharge his student loan debts prior to the confirmation of his Chapter 13 Plan. For example, Mr. Banks' Second Amended Plan was mailed to Great Lakes on October 24, 1994. The plan included a notice of hearing, stated that objections to the plan must be filed within 15 days, and set the confirmation hearing for November 21, 1994. However, in this case, the bankruptcy code and the Rules of Bankruptcy Procedure demand otherwise. While the Court recognizes that sophisticated lenders such as ECMC, Great Lakes, and SallieMae should not turn a blind eye to the

confirmation process, *see Linkous*, 990 F.2d at 163, neither should they fall victim to a Chapter 13 plan that flouts both bankruptcy law and the Constitution. Since Mr. Banks was seeking to determine the dischargeability of a student loan debt, his creditors were entitled to a heightened degree of notice.

In support of their argument to the contrary, Appellees cite *In re Pardee*, 218 B.R. 916, a Ninth Circuit decision in which Great Lakes was disallowed from collecting post-petition interest after the debtor received a discharge pursuant to a confirmed plan to which Great Lakes did not object. For the reasons cited in *Linkous* and *Cen–Pen*, this Court believes that were the Fourth Circuit to have considered the issues in *Pardee*, it would not have ignored the Constitutional aspects of Great Lakes' *res judicata* argument, and would have reached the opposite conclusion. Furthermore, the Chapter 13 plan in *Pardee* expressly purported to discharge the debtor from post-petition debt. *See Pardee*, 218 B.R. at 918 ("any remaining unpaid amounts, if any, including any claims for interest, shall be discharged by the plan."). In this case, because Mr. Banks' plan failed even to mention "discharge" or "dischargeability" with respect to the post-petition interest on his student loan debt, ECMC and its predecessors were subject to a lesser degree of notice than the debtor in *Pardee*.

## IV. CONCLUSION

■ 11 U.S.C. § 1327(a) provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Nevertheless, if a plan has not been "proposed in good faith and not by any means forbidden by law,"

11 U.S.C. § 1325(a)(3), a bankruptcy court should not confirm the plan. Accordingly, as in this case, when a Chapter 13 plan contains language which not only attempts to achieve an improper goal, but does so in the absence of a proper statutory showing or adversary proceeding, the plan should not operate as *res judicata*. Therefore, the decision of the bankruptcy court must be REVERSED. Likewise, Appellee's Motion for Sanctions Pursuant to Rule 9011 shall be DENIED. The Court finds that ECMC's claim for post-petition interest against Mr. Banks survived the bankruptcy court's Discharge Order in his case.